May it please the court, Joseph Horowitz representing Appellant Justice Network. Judicial immunity is not applicable to the conduct of the defendant judges here and the ruling of the district court should be reversed. Justice Network entered into thousands of contracts with individual criminal defendants in Craighead County. Criminal defendants agreed to pay a $35 monthly fee. Could you describe how this, how does this come about that everybody ends up with a contract with the Justice Network that's on probation? What's the, how did that evolve to a private service? There had been a 20-year course of conduct, Your Honor, a course of performance where the Justice Network had been in Craighead County since the late 90s providing those services to individual criminal defendants. They provided those services. There had been an understanding with the Craighead County judicial system that... Is there an agreement, a contract between the county and Justice Network? There is not, Your Honor. There was no contract between Craighead County and the, and the, and the... So do the defendants contact you or do you contact them and how does that, how does that work? Practically the way it worked, my understanding, Your Honor, was that the these criminal defendants were, were in the system. They were brought in for, for their criminal adjudication. As part of that process, the Justice Network was providing those services to them. The probation, the counseling, the drug testing. But they just don't walk in. It just seems, I just, in reading the briefing, I just, I just never saw how this, how it become just the standard that if you were required to have probation services, they were going to be provided by this entity to which you would owe fees. Right. My understanding, Your Honor, was it was a course of over 20 years that they, or Justice Network, was providing those services and it was, it was an un, it was an unbroken chain of 20 years of performance. That's my understanding, Your Honor. My understanding... More, more directly to the issues we have. Because the ordering of probation, the are essential judicial functions. They're not decisions that are going to be made by entities other than courts. Uh, why wouldn't that be something that would be in that, uh, in the circumference of court judicial decision making that would be immune? That's the, that is the question of this case, Your Honor. And the answer to that question is that what we have here was a contract between a probation services provider and an individual defendant. That's what we had. That there were, there were fees that were owed. What the, what the judges did was abrogate, cancel, nullify those contracts. So, so could, could you help me out with specifically how that worked? Um, your brief uses forgiving fees, canceling fees. I mean, what specifically did the state court do? Uh, is there an, I opinion finding these contracts void? Uh, what specifically was, was filed or what did the judges do that we can take a look at or that you can describe? Thank you, Your Honor. And I just, your point before, um, that there's no finding, I believe that actually goes to another one of the primary issues here. The Justice Network wasn't part of any litigation where, or any proceeding where these contracts were nullified. My understanding, Your Honor, of the process, practically the way it happened, that there was an announcement, an amnesty day. Criminal defendants would come into the court. They would, um, they would advise the court that they were looking for, um, for resetting of their payment plans, um, and, and the like. What then would happen, Your Honor, is that the clerk would go into his, his or her computer and indicate, let's say there were $100 owed to Justice Network, zero. No more money owed to the Justice Network as per the court, in the court's docket, in their system. Essentially a court order. The court didn't actually order that the contracts were void. The court simply said, you don't owe the money to, uh, any longer. Correct. The practical impact, though, was that the contracts were nullified. They didn't, the court didn't. Do you retain a remedy at law here? I'm sorry, Your Honor. There's a contract between, through probationers and, and your organization. Do you maintain, at this point, remedies at law against any of those for breach of contract? The answer to that question, Your Honor, is that the practical impact of the court nullifying and zeroing out that, that, that, um, payment owed to the Justice Network, the practical impact is that there has been a judicial determine, a judicial, judicial, um, there's been a, there's been an indication in the court system that the Justice Network, Justice Network can't go ahead now. Which sounds very much like a judicial act that would be immune. It's administrative, Your Honor. That's what it is over here. We're dealing with administrative, administrative act. Because if you look at it, it's a sweeping, broad-based, indiscriminate, not a discreet determination about each individual's, uh, probation payment plan to the Justice Network. They said any, any criminal defendant, any criminal defendant, wherever you may be in Craighead County, comes to court, your fees that you've agreed to pay the Justice Network, those fees are now no longer owed to them. There wasn't, uh, a judicial. So what's this current state of the contracting of judicial network with detainees or probationers in Craighead County? As a result of the, the, the election of these district judges, Your Honor, the Justice Network was, was basically given, shown the door. They were asked to leave and they are no longer present in Craighead County. They are no longer, those contracts that they've, that they invested time, effort, money, they spent services, they spent money to their employees, all of that. That's, that's, they can no longer collect on that. Well, have you, I'm sorry, Chief. Well, it just, it just, I'm still kind of in the dark how it got started. So it's kind of odd how it ends as well. Um, it's, it seems that it ends kind of like it started, just kind of, you know. Your Honor, the, the, the beginning and the end is somewhat nebulous. I agree with that. But the, the point here isn't how it began and ended. You have 20 years of conduct and you have contracts between a services provider and a criminal defendant, and there's hundreds of thousands of that they can no longer recoup and which they, like I indicated before, they paid employees, they paid for the testing. They, they, all this money was outlaid. The county got a service. They got the, those. Are there other counties in Arkansas where this service is provided by Justice Network? My understanding, Your Honor, is that there are, but I believe in those counties, there are individualized contracts between the Justice Network and the counties. That's why this case is somewhat different. But my understanding also is that, that the, the specific conduct we're complaining here, it's, it's, it's limited to Craighead County. As I indicated, Your Honor, the judges instituted what they called an amnesty program that provided criminal defendants who were delinquent on payments to have their fees, to have their fees nullified by the Justice Network. Your Honor, I see that I'm running into my rebuttal time and there are numerous issues, as you could tell by our briefing. I'd like to just save some time to rebut those arguments. Thank you. Thank you, Mr. Horowitz. Mr. James. Good morning, Your Honors. My name is Robert James and I represent the co- appellee in this case, David, Judge David Boling and Judge Tommy Fowler in this case. My clients, this court should affirm the district court's order dismissing all of Justice Network's claims because my clients are entitled to absolute judicial immunity. After Judge Boling and Judge Fowler sentenced an individual to probation in a misdemeanor case in Craighead County, they maintain control over these sentences of probation and they may modify or discharge that person from probation at any time. They act within their judicial authority in presiding over court and deliberating over cases. As part of this function, they may amend the court orders. They may act within their judicial capacity when they suspend, modify, or terminate the terms of the probation. They may impose additional conditions and extend or postpone the sentence. They have the authority to reset payment plans for costs and fees and forgive court costs and fees that can be incurred. I appreciate your comments on whether you think there's a distinction between what's been described as canceling fees and how that relates to whether or not the contracts here are void. The contracts were not voided by the court. The judges just took these cases over in an amnesty program. The amnesty program would be they would allow these defendants to come into court and the judge would take them on a case-by- case basis and the judge could waive fees or costs. They could waive fines, waive warrant fees. Do you agree that that action prevented Justice Network from recovering fees? The contract, if there is a contract, it is between Justice Network and the contract between them and the probationer. You're saying what the judge did was say you don't owe the court or you don't owe the government, the city, any for X requirement, any probation fees or the like. The consequence to Justice Network is they can't get it through the normal channel. They have to go directly to the defendant to get it? Yes. Their remedy is not with my clients because my clients are performing judicial functions by maintaining control over these probation sentences and not, irregardless of what contract there may be, between the judicial network and the probationer. To your knowledge, did Judicial Network ever seek direct payment from those probation? Your Honor, I'm not aware of that and there's nothing in the record that concerns. All these acts are judicial in nature because they relate to general functions normally performed by my clients. These are not administrative acts. Judge Boley and Judge Fowler have an absolute immunity when performing these judicial functions. A function is a function normally performed by a judge. This is in the mirrorless case that was cited in our brief. The judge will not be deprived of immunity because the action he took was in error, was done maliciously or in excess of his authority. Rather, he will be subject to liability only when he acted in clear absence of all jurisdiction. The Arkansas Constitution provides that the district courts have authority over misdemeanors and they have the jurisdiction. So the issue of jurisdiction is a non-issue in this case. What about injunctive relief? Injunctive relief, that would be controlled by the the FCISA and that was passed to overcome those issues out of judicial. Judges cannot be found for injunctive relief except for when there is a declaratory judgment existing or when there there's no declaratory judgment available. Well, if they're seeking prospective relief only, would would that not be something that the plaintiffs could pursue? Well, under the 1983 was amended by the Court Improvement Act that said that it's prohibited. That prospective relief is prohibited? Yes. And the district court... I understood it the other way, but maybe you're right. Well, the district court correctly concluded that Judge Bowling and Judge Ballard do perform judicial acts citing two statutes in Arkansas. The district court correctly concluded that one statute is 1690.115 in which the district court correctly stated that this statute provides the courts of record shall have the authority to suspend the imposition of sentences or fines. So the judicial authority is the district court was correct when it relied on that statute for a during a period of probation. A court may modify a condition imposed by the defendant. The judges may also impose additional conditions. These are conditions such as drug testing, anger management, in any community service, any other services that may be part of the probation. 1617.127 gives my clients the authority over probation and may order an individual to probation services with the probation fees and cost in sentencing. As well, the judges may terminate probation. Your Honor, I'm out of time. Are there any other questions? I see none. Okay, this court should affirm the district court's order dismissing all of Justice Network's claims because my clients are entitled to absolute judicial immunity for all and for all of the other reasons set forth in our brief. Thank you. Thank you, Mr. James. Good morning. John Wilkerson. I actually represent all the cities except for Jonesboro and Craighead County, but for judicial economy, we all agree that I present the collective case of the cities and counties. Mr. Wilkerson, who did the judges work for? The city or the state or the county? The state. The state judges and Amendment 80 says that. Amendment 80 makes it clear. And then, of course, the enabling legislation that was passed in 2011 and in January of 2012, they became state court judges. And the Supreme Court of Arkansas has the superintendent in control over the judge, and that's Amendment 80, Section 4 of Amendment 80. As the plaintiffs even pointed out in their complaint, that is that the courts use their judicial office and their powers to do this. The city simply has no judicial authority or no power at all in regulating what the judges do, whether it be a judicial act, which we agree with, that it is absolutely a judicial act when you're deciding probation and repayment of probation fees and whatnot. So we absolutely agree with that. Cities just have no control on what the judges do at all. And so what the cities pay, cities and counties pay 50% of the salary, that's it. And Carter versus Cash, the state court case, makes it clear that paying the salaries alone is not dispositive of the issue. And while the plaintiffs cite that Lake Country case, I think if I'm quoting them correctly in their brief, that paying the salaries is dispositive, that's nowhere in that case. That Supreme Court case has nothing to do with the issues before the court right now. Carter versus Cash, which says that salaries alone don't, salaries may be an element of it, but control is the ultimate element of whether a city has any, or an employee, employer has any control over an employee or whether that employee exists at all. And they're simply, they're simply not employees of the city. Even if they were employees of the city, there's no allegation and no evidence or no, no allegation made in the complaint, or at least substantive, that the judges are policymakers for the city. And the plaintiffs cite to Butler versus Williams and says that because the judge in Butler versus Williams was given the sole authority to hire or fire the court clerk by the city, then, then in that case, that meant that the judge is the policymaker. We have no control over what we, what the judge does with probationers. So while if, if the city did have control and then gave all that control or power to the judge, perhaps that would make them a policymaker, but the mayor, the city council just has no ability to do anything with probationers or fines. Just real quickly on the ratification, there are two elements. There's actually three in my opinion to have a ratification claim. Knowledge of the act, specific approval of the subordinates act. So it's knowledge of the act, specific approval of the act, but the act has to be done by a subordinate. And the judge is simply not a subordinate of the cities of Arkansas, these cities, or of Craighead County. And with that, unless there's any other questions, I'll sit down. Thank you. Your Honor, to your question of my co-counsel regarding what Justice Network has done to collect these, on these contracts, that's a primary question. They can't collect on these contracts. If they did, it would be subject to Rule 11 sanctions, Your Honor, because these contracts have been deemed no longer valid. So for the Justice Network to go ahead, to go to the criminal defendant and say pay up, the criminal defendant will point to the fact that the contract has been deemed nullified, abrogated, canceled by the district court judges. That's point number one, Your Honor, in response to my co-counsel's argument. Secondly, the issue of the payment of the judge's salary is the issue in that Lake Country Supreme Court decision. And more than that, Your Honor, in Hess v. Port Authority, another case from the Supreme Court, the source of any damages award is, quote, the most salient factor that is used in determining 11th Amendment immunity. The burden of proof in establishing immunity is on the movement, on the party trying to establish that immunity, which in this case would be the county and the cities. They haven't done that because they haven't presented any proof in their motions to dismiss what the source of that award would be. That in itself, Your Honor, is a reason to deny their application with respect to sovereign immunity. One final note, Your Honor, on the issue of the statutory scheme here in Arkansas, I think it's important to look at this a little bit more carefully. 1227.124 and 1227.134 specifically indicate that the Department of Community Corrections, in the circuit courts, that those entities are charged with the responsibility of retaining, replacing, or hiring probation services providers. In their motions to dismiss, the defendants failed to address how the unilateral decision of Judges Bowling and Fowler to replace the Justice Network and to cancel these fees, how that complies with the statutory requirement of 1227.124 and 1227.134. Where was the Department of Community Corrections in this whole scheme? What we have here is we have two judges who ran a platform to remove the Justice Network from Crickett County. They were successful in their election campaigns and they won and they removed them, but the involvement of these other entities, the circuit court, the Department of Community Corrections, that's all absent from their motions, Your Honor, and in our argument, Your Honor, is that that is reason for reversal of the district court's decision. So, Your Honors, with respect, we request that the court reverse the ruling of the district court and thank you for your time. Thank you. Thank you, Mr. Walts. The court thanks all counsel for the argument you provided to us this morning and the briefing which you have submitted. We'll take it under advisement.